UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAVA TRADING COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>PERFORMANCE FOOD GROUP,<br><br>    Defendant. | No. C05-1191MJP<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ALTERNATIVE DISPUTE RESOLUTION |

This case comes before the Court on Defendant Performance Food Group's ("PFG's") Motion to Dismiss or Compel Arbitration (Dkt. No. 36). Plaintiff Java Trading Company ("JTC"), a WA corporation, originally brought this case in King County Superior Court and alleges breach of contract and conversion, asks for declaratory relief and demands specific performance on the part of Defendant Performance Food Group ("PFG"), a TN corporation. Defendant timely removed the case to this Court on the basis of diversity jurisdiction. Defendant filed counterclaims against Plaintiff, which are also based upon the deterioration of these parties' contractual relationships. Previous to the filing of this case, a similar action between these two parties was filed in the Eastern District of Virginia before Judge Spencer. In that action PFG was the Plaintiff and JTC was the Defendant and the claims were based on issues arising out of the contracts between the parties. In October 2005, Judge Spencer dismissed the case before him, referring it to arbitration. Shortly thereafter, Defendant PFG filed a motion in this Court to dismiss the case before us to arbitration, stating that the issues in the two cases are the same. Plaintiff JTC, however, argues that the issues in this case arise from a separate contractual relationship between the parties than the issues in the Virginia case and that

ORDER - 1

arbitration is, therefore, not required. The Court finds that there is strong evidence favoring the position that the Supply Agreement provides a dispute resolution framework that should apply to all of the contracts. This case is therefore DISMISSED to mediation, pursuant to the language of the Supply Agreement. In the event that mediation fails, the parties are directed to arbitrate this dispute. Should the parties find that they are unable to agree as to who should provide these services, the Court will appoint a mediator and/or arbitrator. The parties are to report to the Court within ten (10) days of this Order regarding who will conduct the alternative dispute resolution in this matter.

## BACKGROUND

On December 19, 2002, PFG and JTC entered into a series of contracts to facilitate the parties' newly-minted business relationship. PFG had retained JTC to design, coordinate, and provide a hot beverage program for PFG's operating companies. In addition, JTC agreed to supply, finance, and maintain the equipment that PFG would use in conjunction with its hot beverage program. The parties executed four contracts covering various aspects of their relationship: The Supply Agreement, The Rental Program Agreement, The Equipment Rental Agreement, and the Equipment Maintenance Agreement. The Supply agreement set forth the framework for the hot beverage program, while the Rental Program Agreement, the Equipment Rental Agreement, and the Equipment Maintenance Agreement set forth the parameters of the parties' relationship that concerned the financing, renting, and maintaining of the equipment for the hot beverage program. This aspect of the parties' relationship was known as "the JTC Equipment Program" and is referenced in clause 5.1 of the Supply Agreement:

> An outline for JTC's equipment program for PFG and its OPCOs [operating companies] is set forth in the attached Exhibit E ("the JTC Equipment Program"). The JTC Equipment Program is designed to assist all OPCOs who are not currently in equipment programs and to encourage OPCOs with equipment programs to join the JTC Equipment Program. The equipment program will provide an equipment purchase/line for each participating OPCO, or PFG Broadline may purchase, on behalf of the OPCO, allowing for the purchase of equipment over a 5 year term designed to be paid for out of the rebate structured into product pricing. An equipment rental program will also be offered that allows no retained equity in the equipment to PFG or its OPCOs. The equipment program will be subject to a separate agreement which will be added to this agreement as Exhibit E.

ORDER - 2

(Def's Ex. A at 26). All three contracts relating to the JTC Equipment Program are attached to the Supply Agreement as Exhibit E. All three equipment program contracts contain an integration clause. The integration provision at clause 9.5 of the Rental Program Agreement states:

> ENTIRE AGREEMENT; AMENDMENT. This Agreement and the other Program Documents constitute the entire agreement between Obligor and JTC with respect to the Equipment Program and the Equipment Financing Line, and supersede all prior negotiations, communications, discussions and correspondence concerning the same subject matter including under the terms of the Supply Agreement. This Agreement may be amended or modified only in writing signed by each party. No one, except a corporate officer of JTC, has any authority on JTC's behalf to approve or modify this Agreement or any Program Document or to act to make any representation on behalf of JTC.
>
> Except with respect to the terms superseded by this Agreement as to the purchase of Equipment and the Equipment Financing Line, the Supply Agreement remains in full force and effect.

(Id. at 70). The integration clauses for the Equipment Rental and Equipment Maintenance Agreements are nearly identical to each other and provide that each agreement, "constitutes the entire agreement between the parties and may be amended, modified, altered or changed only by a written agreement signed by the parties." (Id. at 110 & 1104). Although the Supply Agreement was signed in December 2002, and states that it is to be governed by Virginia state law, the three contracts comprising the equipment program were all executed in July 2003 and provide that they are to be governed by Washington state law. Another disparity between the Supply Agreement and the equipment program contracts is the fact that the Supply Agreement contains a dispute resolution clause, whereas the equipment program contracts contain no dispute resolution provisions. The Supply Agreement's dispute resolution provision is located in clause 17.6 of that contract and reads:

> In the event of any dispute arising under or related to this Agreement or any aspect of this Agreement, then the parties shall proceed under the procedures set forth in this Paragraph. The parties shall first attempt to resolve the dispute between them without resort to any legal process. If the parties cannot resolve the dispute between them, they shall conduct a non-binding mediation. The parties shall conduct the mediation in good faith. If the mediation process is unsuccessful, then either party may elect to file for any other legal remedies available by law. The substantially prevailing party in any arbitration shall be entitled to recover its reasonable attorneys' fees, costs and expert fees. In no event may any party file an action with any court prior to filing a demand for arbitration. Any arbitration award may be filed with the Superior Court of the State of Washington for King County, and enforced through court processes.

ORDER - 3

(Id. at 35-36). Because the equipment program contracts contain no dispute resolution mechanism, Defendant PFG now claims that the dispute resolution process set forth in the Supply Agreement applies to all three equipment program agreements, as well as to the Supply Agreement. This assertion is based on PFG's observation that the Supply Agreement was executed first and that it incorporates the other three agreements into it as Exhibit E. Plaintiff disagrees, claiming that the equipment program contracts are separate and independent contracts from the Supply Agreement and the Court should treat them as such.

Shortly before this case was filed before the Court by Plaintiff, Defendant filed a very similar case in the Eastern District of Virginia, pleading breach of the Supply Agreement by JTC. In October, 2005, Judge Spencer of the Eastern District of Virginia dismissed PFG's case on the basis of the arbitration clause of the Supply Agreement. PFG claims that this decision bolsters its argument that this case should also be sent to arbitration. In the alternative, PFG asks this Court to dismiss this case on the basis of *res judicata* or collateral estoppel. JTC notes that the claims it brings are based on two of the three equipment program contracts rather than the Supply Agreement and, therefore, are not subject to Judge Spencer's decision, nor should its claims be dismissed under the doctrines of *res judicata* or collateral estoppel proposed by PFG. However, JTC concedes that PFG's counterclaims in this action, which are based on an alleged breach of the Supply Agreement, should be arbitrated.

## ANALYSIS

**A. Should the Court Compel Arbitration?**

With the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1-16, Congress set forth a strong policy favoring arbitration where there is an expressed intent to arbitrate by the parties to a contract. In general, where there are any doubts as to the construction of a contract, the presumption under the FAA is to arbitrate. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983) Generally, there is no discretion on the part of the District Court where the issue of

ORDER - 4

arbitration is concerned, as long as the court is satisfied that there is no issue as to the formation of the contract to arbitrate. <u>Simula Inc. v. Autoliv, Inc.</u>, 175 F. 3d 716, 719-720 (9th Cir. 1999). In turning to the parties' claims, this Court need only decide whether a binding arbitration agreement exists and whether the dispute at hand was intended to be covered by that agreement. <u>Republic of Nicaragua v. Standard Fruit Co.</u>, 937 F. 2d 469, 474 (9th Cir. 1991).

Plaintiff JTC argues that dismissal of its case is not appropriate because the equipment program agreements, on which it bases its claims, do not contain arbitration agreements. Defendant PFG, however, argues that the arbitration clause contained in the Supply Agreement covers all of the agreements. Although there are arguments that support each side's contentions, an analysis of the relevant facts and law demonstrates that these claims should be resolved through alternative dispute resolution.

**1) Does a binding arbitration agreement exist?**

The arbitration clause at issue in this case is found in clause 17.6 of the Supply Agreement and is quoted above. In rendering his opinion on the related litigation in Virginia, Judge Spencer found that this clause is a binding arbitration clause despite some internal contradictions in the language of the clause itself. (Def's Ex. A at 117). Although this clause is confusing, it requires JTC and PFG to engage in informal dispute resolution, mediation, and arbitration before filing a case for litigation. Neither party claims a contractual defect that would render this agreement invalid. Thus, the real issue for this Court is how far the reach of the arbitration clause extends.

**2) The Complained-of Behavior Stems from Cancellation of the Supply Agreement**

Plaintiff argues that the claims it brings in this case have nothing to do with the arbitration that Judge Spencer ordered in the Eastern District of Virginia because the claims in this case are brought pursuant to the Equipment Program Agreements and the Equipment Rental Contracts, as opposed to the Supply Agreement (First Am. Compl. at ¶ 2.2). However, the language of Plaintiff's First Amended Complaint and the structure of the parties' contracts undermines this argument. In paragraphs 2.5 and 2.6 of the First Amended Complaint, JTC notes that PFG terminated the Supply

ORDER - 5

Agreement and, as a result, the Equipment Program and Equipment Rental Agreements were also terminated. JTC alleges that PFG's termination of these agreements was wrongful. (Id. at ¶¶ 2.5-2.6). The wrongs alleged on the following pages against PFG stem from the termination of these agreements between the parties and PFG's subsequent alleged failure to pay JTC money it owed for the equipment that JTC had provided. (Id.). The reason that PFG's termination of the Supply Agreement also terminated the equipment program contracts is because the four contracts have interrelated termination dates: paragraph 2.1 of the Rental Program Agreement, paragraph 3 of the Equipment Rental Agreement, and paragraph 4 of the Equipment Maintenance Agreement all provide that those contracts will terminate upon termination of the Supply Agreement. (Def's. Ex. A at 56, 105, 114). Defendant's complained of action, therefore, is not termination of any of the equipment program agreements, but rather, termination of the Supply Agreement. This fact, demonstrating the closely related nature of these contracts, is one reason why the Court decides that the Supply Agreement's arbitration clause also applies to disputes arising under the equipment program contracts.

**3) Paragraph 17.11 of the Supply Agreement and Paragraph 9.5 of the Rental Program Agreements Demonstrate that All Four Contracts were Intended to Function Interdependently**

Plaintiff makes much of the integration clauses present in all three equipment program contracts. However, if one examines each integration clause independently and in light of the integration clauses of each of the other documents, meaningful enforcement of all four integration clauses along with all of the other clauses of the contracts is not possible. First, paragraph 17.11 of the Supply Agreement provides, "Exhibits A, B, C, D, and E are integral parts of this contract" (Def's Ex. at 37). As noted above, the equipment program contracts are attached to the Supply Agreement as Exhibit E. However, paragraph 9.5 of the Rental Program Agreement, *supra,* provides that it, along with the other "Program Documents" constitutes the entire agreement between the parties as to the Equipment Program and Equipment Financing line, and that it supersedes any other

ORDER - 6

writings, including the Supply Agreement as to these subjects. Nonetheless, the last sentence of paragraph 9.5 also provides: "[e]xcept with respect to the terms superseded by this Agreement as to the purchase of Equipment and the Equipment Financing Line, the Supply Agreement remains in full force and effect." (Def's. Ex. at 70). Finally, paragraph 20 of the Equipment Rental Agreement also provides that it, "constitutes the entire agreement between the parties. . ."

Plaintiff JTC points out that "a party's agreement to arbitrate disputes 'arising under or related to' one contract does not obligate it to arbitrate disputes arising under a separate contract." Armco Steel Co. v. CSX Corp., 790 F. Supp. 311, 318 (D.C. 1991). To bolster this point, Plaintiff notes that the Supply Agreement was executed six months before the equipment program contracts and that the latter are governed by Washington law, whereas the Supply Agreement is governed by Virginia law. Plaintiff relies on International Ambassador Programs, Inc. v. Archexpo, 68 F. 3d 337 (9th Cir. 1995), to support its argument. In Archexpo the Ninth Circuit decided that an arbitration clause in one contract concerning a tourist group between International Ambassador and Archexpo did not govern a dispute arising under a different contract concerning a separate tourist group between the two parties where the second contract contained no arbitration clause. Id. at 340. The Court noted that one contract had been executed in April, while the other contract had been executed in July. Although there are some superficial factual similarities between Archexpo and the case at hand, the result reached by the Ninth Circuit does not control the outcome here because in Archexpo there was no evidence that the contracts were related, as there is here. In Archexpo, the two contracts in dispute were separate agreements between two parties to provide separate tourism services on two separate occasions. By contrast, the equipment program contracts are the mechanisms by which the Supply Agreement is fully effectuated–the equipment program contracts would not exist if the Supply Agreement did not establish the parameters of JTC and PFG's relationship and the goals of the Supply Agreement would not be met without the equipment program contracts. Furthermore, JTC cites to no case law that holds that the fact that contracts are governed by separate state law is a strong factor weighing against arbitration.

ORDER - 7

In another case cited by Plaintiff, the District Court for the District of Columbia decided that it could not compel arbitration under two separate contracts based on an arbitration clause in only one of the contracts where the two contracts had vastly different terms of twenty-five and five years. Armco Steel, 790 F. Supp. at 318. Here, however, termination of the Supply Agreement causes the termination of the equipment program contracts, providing further evidence of the interrelated nature of these contracts.

Based on analysis of the controlling case law, as well as the language and structure of the parties' agreements, the Court interprets the language of clause 9.5 of the Rental Program Agreement as establishing that the equipment program contracts provide the particulars relating to equipment finance and purchase, but that the main framework of the parties' relationship, including dispute resolution, is set forth in the Supply Agreement. This view is reinforced by the fact that none of the equipment program contracts contain a mechanism for dispute resolution. Moreover, this argument seems to be the one that JTC successfully made to Judge Spencer of the Eastern District of Virginia when it sought to have PFG's claims under all four contracts sent to arbitration. Finally, the factual allegations of a plaintiff need only "'touch matters' covered by the contract containing the arbitration clause" in order to trigger the arbitral process. Simula, 175 F. 3d at 721. The Court finds that the terms expressed in the equipment program contracts certainly "touch matters" concerning the Supply Agreement because of the interrelated nature of these agreements. All of these factors weigh in favor of dismissing this case for alternative dispute resolution.

**4) The Interrelated Nature of JTC's and PFG's Claims Counsel for a Uniform Approach**

As noted previously, PFG brought a claim in the Eastern District of Virginia against JTC. PFG based its claim on alleged fraudulent inducement on the part of JTC that caused PFG to enter in to the four contracts around which this litigation centers. In October, 2005, this case was sent to arbitration. Now, JTC is claiming that PFG breached the Supply Agreement by wrongfully terminating it and, as a result, the three equipment program contracts. In the preceding analysis, the

ORDER - 8

Court has determined that the contracts themselves are interrelated. By extension, the Court also finds that Defendant's claims in Virginia are interrelated to the claims before this Court. Although Plaintiff suggests sending only PFGs claims to arbitration and allowing JTC's claims to proceed in this Court, on a practical level it is hard to imagine how the arbitrator assigned by the Virginia court will avoid making rulings that do not interfere with the progress of this case and vice versa. Judicial economy and the desire to avoid conflicting rulings also favor dismissing this case for alternative dispute resolution.

**B. Mediation Followed by Arbitration**

Plaintiff has requested that if the Court finds that the arbitration clause in the Supply Agreement applies to its claims that the Court order mediation before arbitration in conformance with the language of that clause. This request is an appropriate one, given the clear language of clause 9.5 of the Supply Agreement. In the event that mediation does not succeed, this Court orders the parties to arbitrate their disputes.

CONCLUSION

This case is DISMISSED to mediation, pursuant to the language of the Supply Agreement. In the event that mediation fails, the parties are directed to arbitrate this dispute. Should the parties find that they are unable to agree as to who should provide these services, the Court will appoint a mediator and/or arbitrator. The parties are to report to the Court within ten (10) days of this Order regarding who will conduct the alternative dispute resolution in this matter.

The Clerk is directed to send copies of this order to all counsel of record.

Dated this 7th day of February, 2006.

Marsha J. Pechman
United States District Judge